## Case No. 14,991.

### UNITED STATES v. DOWNING.

[3 Cent. Law J. 383.][1]

District Court, D. Kansas. 1876.

INDIANS—SELLING LIQUOR TO—INDIAN COUNTRY.

1. The act of congress (Rev. St. § 2139) which provides that "every person, except an Indian in the Indian country, who sells, exchanges, gives, barters, or disposes of any spirituous liquor or wine to any Indian under the charge of an Indian superintendent or agent, or introduces or attempts to introduce any spirituous liquor or wine into the Indian country, shall be punished," etc., was only intended to prohibit the selling, giving, or bartering of spirituous liquors or wine to an Indian in the Indian country and not elsewhere.

2. The words "in the Indian country," refer to the locality of the offence, and not to the habitation of the Indian excepted from the penalty of the act.

[Indictment for selling liquor to Indians. Heard on motion to quash.]

George R. Peck, U. S. Dist. Atty.

G. C. Clemens, for defendant.

---

1 [Reprinted by permission.]

FOSTER, District Judge. The indictment alleges that the defendant did, within the district of Kansas, sell, exchange, give and barter one pint of spirituous liquor to Richard Rice and Peter Burdeaux, both Indians of the Tribe and Nation of Pottawatomies, and being under the charge of M. H. Newlon, an Indian agent duly appointed, etc. The defendant moves to quash the indictment for that it does not charge an offence against him.

The law (Rev. St. § 2139) provides as follows: "Every person, except an Indian in the Indian country, who sells, exchanges, gives, barters, or disposes of any spirituous liquors or wine to any Indian under the charge of an Indian superintendent or agent, or introduces or attempts to introduce any spirituous liquor or wine into the Indian country, shall be punished," etc. The question at issue involves the construction of the sentence, "except an Indian in the Indian country." Do the words, "in the Indian country," refer to the residence of the Indian excepted from the operation of the law, or do they define the locus in quo of the act prohibited? In other words, does the law only prohibit the traffic of liquor in the Indian country, by any person except an Indian, or does it prohibit (with the same exception) the traffic with any Indian under the charge of a superintendent or agent, whether in the Indian country or not?

Under the law of June 30th, 1834 (4 Stat. 732), the prohibition extended only to the Indian country. By the amendatory act of February 13th, 1862 (12 Stat. 339), the words "in the Indian country" were stricken out, thus making the prohibition apply to any Indian under the charge of a superintendent or agent, whether in the Indian country or not. Now these two acts of 1834, and 1862 have been repealed by the Revised Statutes, and section 2139, which we are called upon to construe, appears to be the only law in existence prohibiting the selling, bartering, or giving of liquor to Indians. There is but little to aid us in ascertaining the intention of the law-making power in this act, except the context and the phraseology of the law itself. The chapter under which this section is found is headed: "Government of Indian Country." The head and marginal notes to this section read. "Penalty for Selling Spirituous Liquors in Indian Country." The first paragraph of this section says: "No ardent spirits shall be introduced under any pretense into the Indian country." By an examination of the various provisions of this chapter, it will be seen. that the whole tenor of the law is to regulate and govern traffic with the Indians in the Indian country. The punctuation of this section also conveys the same idea, there being a comma before and after the words, "except an Indian," and I construe those words as if they were in parenthesis.

It appears to me, that the section under consideration was intended to prohibit the selling, giving, or bartering of spirituous liquors or wine to an Indian in the Indian country, and not elsewhere. That the words "in the Indian country," refer to the locality of the offence, and not to the habitation of the Indian excepted from the penalty of the act. We observe in section 2135, prohibiting other kinds of traffic, a similar exception of an Indian. It was evidently the intention of the legislature to prevent not only the introduction of liquor into the Indian country, but also the selling or giving it to the Indian after it had been introduced, by every person except an Indian. The exception prevents the application of the law to an Indian, except so far as his liquor would be subject to seizure under the provisions of the next section. So it would seem the "untutored child of the forest" might traffic in liquor without limit, subject only to the inconvenience of seizure and confiscation. If the other view is taken of this law, and the words "in the Indian country," be applied to the domicile of the Indian excepted, it would result that a special privilege is granted to an Indian in the Indian country, over an Indian in any other locality. The former could carry on this traffic with all the tribes and nations of Indians, while the latter would be prohibited. And this further question would then arise: Would the Indian residing in the Indian country be limited to traffic in that country, or would he carry this privilege about with him, and have a roving commission to deal in whiskey anywhere he pleased, provided the Indian country was his domicile? In brief, would it except an Indian living in the Indian country, or an Indian selling in the Indian country from the operation of the law? Or must the excepted Indian both reside and carry on the traffic in the Indian country? This law is wonderfully and fearfully made, and like the grace of God "it passeth all understanding." We find ourselves groping in darkness when we accept any other theory than the first one suggested, and upon which we rest our decision. But we are met with the argument that under this construction dealers in liquor may set up in the traffic on the borders of the Indian country with impunity, and thus defeat the object and purpose of the law. Now if we are to look beyond the interpretation of the act of congress to the effect likely to result, there are two answers to this objection. First. If his business introduced or attempted to introduce liquor into the Indian country the penalty of the law would reach him. Whether selling a drink of liquor to an Indian who crossed the border for that purpose would be introducing liquor into the Indian country is a question in metaphysics too abstruse for me to solve, until driven to it by dire necessity. Second. There is a statute law of this state (Gen. St. 524) which in stringent terms prohibits this traffic with the Indians, and which is ample to reach malefactors in the case referred to, and it is eminently proper that the laws of the state should denounce and punish those acts committed within its limits, which tend to do harm to its citizens, and to subvert the peace and good order of the com-

munity. The people of the state lying contiguous to the Indian country, are more immediately affected by this traffic within its borders than are the people of the country at large. It is apparent why congress should legislate against the traffic in the Indian country, which is under the immediate jurisdiction of congress, and yet not interfere when the state jurisdiction intervenes. It is the spirit and theory of the general government to leave to state legislation such matters as are properly cognizable by the local government.

It has been decided by Mr. Justice Miller—U. S. v. Ward [Case No. 16,639]—that the jurisdiction of the court of this state extends over all Indian reservations within the limits of the state, unless by treaty stipulation such reservations were not to be included within the state limits. To use the words of the learned judge: "All territory which was not covered by such treaties, was included within the state within its jurisdiction, and within this irrevocably, unqualifiedly and exclusively." Again he says: "It can not be said of the new state of Kansas that she stands upon an equal footing with the original states in all respects whatever, * * * if congress can without her consent exclude her from the right and the power to enforce the laws which she has made for the protection of the lives, persons and property of her citizens, on any portion of her soil." The Indian country, as defined by the act of 1834, was all that vast and boundless territory lying west of the Mississippi, and not within the states of Missouri and Louisiana, or the territory of Arkansas. As the several new states which have been carved out of this vast territory have been admitted into the Union on an equal footing with the original states, under the principle established by Justice Miller in the Ward Case, this expansive territory has been greatly diminished, and from what was originally the Indian country must now be excluded the new states taken therefrom, and all Indian reservations included within the limits and jurisdiction of such states. Under this rule it is not unlikely, that such Indian reservations within the borders of this state, as were by a treaty stipulation to be excluded from states limits and state jurisdiction, are still in the Indian country, and within its jurisdiction. In this case, however, it is not charged that the liquor was sold on such a reservation or on any reservation whatever, and therefore it is not necessary to decide this point. The great body of the Indian tribes have been removed to the Indian country, and there is but little reason to apprehend that the state of Knasas can not amply protect herself from the liquor traffic with the few remnants of tribes still remaining within her borders. The motion to quash the indictment must be allowed.